**54**

**UNITED STATES, Appellee,**

v.

**Donald C. BALAGNA, Staff Sergeant,
U.S. Army, Appellant.**

No. 65,942.

CM .8901598.

U.S. Court of Military Appeals.

Argued June 3, 1991.

Decided Sept. 3, 1991.

For Appellant: *Captain Michael Huber* (argued); *Colonel Robert B. Kirby* and *Lieutenant Colonel Russell S. Estey* (on brief); *Captain James Kevin Lovejoy.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas,* and *Captain Jonathan F. Potter* (on brief).

*Opinion of the Court*

COX, Judge:

Tried by general court-martial composed of officer members, the accused was convicted, despite his pleas, of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The adjudged and approved sentence extends to a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence. 31 MJ 825 (1990). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DECLARE A MISTRIAL UPON TIMELY REQUEST BY DEFENSE COUNSEL WHEN A WITNESS REVEALED TO THE PANEL MEMBERS THAT APPELLANT HAD SUBMITTED A REQUEST THAT IN LIEU OF TRIAL, HE BE DISCHARGED FOR THE GOOD OF THE SERVICE PURSUANT TO CHAPTER 10 OF ARMY REGULATION 635–200.

We find no error and affirm.

In the prefindings portion of the trial, the defense called Command Sergeant Major Dallas D. Bailey, who told of the accused's outstanding duty performance. During direct examination, Sergeant Bailey stated his awareness that the accused had tested "positive on a urinalysis" in 1988 and that he had spoken "in Sergeant Balagna's behalf" at an Article 15, UCMJ, 10 USC § 815, hearing before the commander. He was then asked whether he would "still speak on his behalf today concerning the same charges?" He replied: "I've read a report which I happen to believe, and I could not say that honestly now; no sir." Defense counsel wisely went on to other

matters. Trial counsel had no cross-examination.

However, the president of the court presented a question to the military judge to be asked of Sergeant Bailey relating to "the report that prevents you from speaking on SSG Balagna's behalf." This question was examined by both counsel, and no objection was asserted.

The following colloquy then transpired:

[MJ] All right. What report was that, if you could ...

A. That was a request for a Chapter 10 that Sergeant Balagna had put in to the—

DC: Objection, sir.

A. —through me to the Battalion Commander, which was turned down.

IDC: Your honor, we have a motion— Could we take a short recess, Your Honor?

MJ: All right. How long?

IDC: Well, we'd request that you admonish the jury that that has no relevance in this trial whatsoever, and they should disregard it; and that's what the law is.

MJ: Well, the court is advised that—as Mr. Zelbst indicated, the answer that the Command Sergeant Major gave regarding the report in question has no relevance to this trial, and you should not draw any adverse inference against Sergeant Balagna in any way because of the fact that particular report came up. Can all the court members abide by that instruction?

[All affirmative gestures from the court members.]

MJ: Does that satisfy you, Mr. Zelbst?

IDC: Yes, Your Honor; thank you.

At that point Sergeant Bailey was excused, and another defense witness was seated. Prior to beginning his examination, civilian defense counsel asked for an out-of-court hearing. Art. 39(a), UCMJ, 10 USC § 839(a). When this convened, counsel moved for a mistrial because of Sergeant Bailey's statement on the ground that the "panel knows that he had to make some admission of guilt for a Chapter 10, and there's no way we can rebut that at this time." Assistant trial counsel argued that the statement came from a defense witness who should have been prepared by the defense; that there was no objection to the question; that the members had been properly instructed; and that it is not clear that the members knew "that a Chapter 10 involve[d] admitting ... guilt." Defense counsel responded that they believed the reference would be to a report of the Criminal Investigation Command and that they presumed that Sergeant Bailey knew information concerning a Chapter 10 application "was inadmissible" in court. Civilian defense counsel argued that trial counsel also did not object to the question since they, too, did not know what the answer would be. After further argument, the military judge denied the motion. Subsequently, in his instructions to the members prior to findings, the military judge again "reminded" the members "that the matter of a Chapter 10, which was mentioned by Command Sergeant Major Bailey, is an inadmissible subject in this proceeding, and it must be completely disregarded by you."

■ At the outset we note that paragraph 10-2c, Army Regulation 635-200, provides that a soldier requesting discharge in lieu of court-martial "will include an acknowledgement that the soldier ... is guilty of the charge(s) or of a lesser included offense(s) therein contained...." Further, we note that Mil.R.Evid. 410(a)(4), Manual for Courts-Martial, United States, 1984, makes inadmissible "any statement made in the course of plea discussions with the convening authority ...," and this is further defined as including "a statement made by the accused solely for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial...." Hence, we conclude that reference to the fact that the accused had acknowledged his guilt in a request for discharge in lieu of trial could not have been properly admitted against him in a subsequent trial. *United States v. Barunas*, 23 MJ 71 (CMA 1986).

■ This leaves us with the question of the appropriateness of the remedy fashioned by the military judge. Appellate defense counsel argue that the refusal of the military judge to declare a mistrial deprived the accused of his right to a fair trial in violation of the Sixth Amendment of the Constitution. They premise this argument on the assumption that knowledge of the contents of a Chapter 10 submission "may be fairly attributed to officers qualified to serve on courts-martial panels." Since this is only an assumption not further developed at trial, we have no way of determining its correctness. However, we will assume its truth for the purpose of our decision here.

Appellate defense counsel rely heavily on our decision in *United States v. Grant*, 10 USCMA 585, 28 CMR 151 (1959). There, in rebuttal to the accused's testimony, trial counsel called the Commanding Officer of Headquarters Command, Fort Carson, Colorado, to recount an unwarned statement by the accused that he committed the offenses in question. In a preliminary portion of his testimony, the commander stated that the accused "had a habit of writing rubber checks." At 589, 28 CMR at 155. The law officer (predecessor to the military judge) sustained an objection and later granted a motion to strike that portion of the testimony relating to other offenses and informed the members "to disregard it." After the witness was excused, the law officer denied a motion for mistrial "but struck all of the [commander's] testimony" and twice "admonished" the members "to disregard it." *Id.* The issue then before this Court was whether the law officer's remedy was sufficient to purge the error. Judge Ferguson, writing for the 2–1 majority, held in pertinent part:

It is difficult to see how the members could erase from their minds the damning effect of [the commander's] vituperative declarations and accord to the accused the fair trial to which he is entitled. As was succinctly stated in *People v. Deal*, 357 Ill 634, 192 NE 649 (1934) [192 N.E.] at page 652:

"... Human nature does not change merely because it is found in the jury box. The human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon."

Accordingly, we conclude that the law officer abused his discretion in denying the defense motion for a mistrial.

The Government argues, however, that any prejudice inherent in the denial of the motion was overcome by the compelling nature of the evidence of accused's guilt. Assuming *arguendo* that the proof of guilt is compelling, the short answer to the Government's contention is that the accused is entitled to a fair hearing.

10 USCMA at 590, 28 CMR at 156.

In the 32 years since *Grant* was decided much water has passed over the dam and many changes have occurred in civilian as well as military law and practice. In *United States v. Rushatz*, 31 MJ 450 (CMA 1990), we had occasion to restate the law concerning the grant/denial of a motion for a mistrial. According to Circuit Judge Sentelle:

Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused. *See United States v. Pastor*, 8 MJ 280, 281 (CMA 1980). The decision to grant a mistrial rests within the military judge's discretion, and we will not reverse his determination absent clear evidence of abuse of discretion. *United States v. Rosser*, 6 MJ 267, 270–71 (CMA 1979); *United States v. Jeanbaptiste*, 5 MJ 374, 376 (CMA 1978).

\* \* \*

Giving a curative instruction, rather than declaring a mistrial, is the preferred remedy for curing error when court members have heard inadmissible evidence, as long as the curative instruction avoids prejudice to the accused. *United States v. Evans*, 27 MJ 34, 39 (CMA 1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). Absent evidence to the contrary, a jury is

presumed to have complied with the judge's instructions. *See Lakeside v. Oregon*, 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978); *United States v. Ricketts*, 1 MJ 78, 82 (CMA 1975); *Donaldson v. United States*, 248 F.2d 364 (9th Cir.1957), *cert. denied*, 356 U.S. 922, 78 S.Ct. 706, 2 L.Ed.2d 717 (1958). The military judge, therefore, did not abuse his discretion in denying appellant's motion for mistrial as the curative instruction was sufficient to purge any prejudice to the accused. *United States v. Morris*, 13 MJ 297, 301–02 (CMA 1982) (separate opinions of Everett, C.J., and Cook, J.)

31 MJ at 456–57.

It would appear that our recent holdings have severely eroded or even eliminated the rationale of *Grant*.[1] At the very least there is tension between *Grant* and our current precedents. One possible explanation, beyond the passage of time and new developments in the law, was enactment of the Military Justice Act, Pub.L. No. 90–632, § 2(9), 82 Stat. 1335, 1336 (1968), which, among other things, redefined the role of the law officer into one more like that of a federal court trial judge.[2] In addition, we have recognized that members of the court-martial are capable of following proper instructions to disregard stricken testimony. *United States v. Rushatz, supra; United States v. Garrett*, 24 MJ 413 (CMA 1987); *United States v. Ricketts, supra; United States v. Morris, supra* at 302 (Cook, J., concurring in the result). Finally, we have recognized that even errors of constitutional dimension may not require automatic reversal where an analysis determines be-

yond a reasonable doubt that the error did not contribute to the defendant's conviction or sentence.[3] *United States v. Davis*, 26 MJ 445, 449 n. 4 (CMA 1988), *citing Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Thomas*, 22 MJ 388, 393 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Remai*, 19 MJ 229 (CMA 1985). *See also United States v. Moore*, 1 MJ 390 (CMA 1976).

The time has come to relegate *United States v. Grant*, 10 USCMA 585, 28 CMR 151 (1959), to its proper place: a vestigial remnant of a by-gone era.

Turning to the instant case, we find no "extraordinary circumstances" requiring the declaration of a mistrial since the "adverse impact can be neutralized by other means." *United States v. Jeanbaptiste*, 5 MJ at 376. The military judge twice instructed the members that the mentioning of "Chapter 10" was inadmissible; and before findings further advised them that it was to be "completely disregarded," and the members indicated their ability to do so. The verdict of the members shows that they followed the instruction since they acquitted the accused of all but the single offense for which there was conclusive evidence of guilt. Finding no abuse of discretion by the military judge, we resolve the granted issue adversely to appellant.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

1. According to *Shepard's Military Justice Citations, United States v. Grant*, 10 USCMA 585, 28 CMR 151 (1959), has been cited only twice since 1968: once for the proposition that "[t]he decision as to whether to grant a mistrial rests in the sound discretion of the military judge," *United States v. Gore*, 14 MJ 945, 949 (ACMR 1982); and once for the proposition that the Government may not introduce opinion evidence "bearing directly on essential elements of charged offenses or on affirmative defenses," *United States v. Franklin*, 4 MJ 635, 637 (AFCMR 1977). However this may be, we agree with the result in *Grant* since the unsolicited remarks of the commander might well approach illegal com-

mand influence. *See United States v. Levite*, 25 MJ 334 (CMA 1987).

2. *See* Arts. 1(10) and 26, Uniform Code of Military Justice, 10 USC §§ 801(10) and 826, respectively (1968).

3. We do not resolve this case on that basis, preferring to save the issue for some later decision. Indeed, it appears that the law is in some turmoil over the appropriateness of the "harmless error analysis" as applied to illegally obtained confessions. *See Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).